UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
ARIAL TECHNOLOGIES LLC,

                                        Plaintiff,

                - against -

AEROPHILE S.A.,
AEROPHILE ORLANDO LLC,

                                        Defendants.
-------------------------------------------------------------------X

14 CV 4435

**OPINION & ORDER**

**LORETTA A. PRESKA, Chief U.S.D.J.**

　　Plaintiff Arial Technologies, LLC ("Arial") brings this diversity action against

Defendants Aerophile S.A. ("Aerophile") and Aerophile Orlando, LLC ("Orlando")

(collectively, "Defendants") alleging breach of contract, fraud and tortious interference relating

to a contract for a helium passenger balloon that Arial sought to operate at the San Diego Zoo.

This is the third forum to hear this dispute.  Arial brought a nearly identical action in the New

York County Supreme Court that was dismissed without prejudice on the grounds that the

contract between Arial and Aerophile required the parties to proceed to mediation in France

before bringing the suit to court.  After the parties failed to reach an agreement in mediation,

Defendants filed suit in France seeking a declaratory judgment that the contract is no longer in

force or effect, and now Arial seeks to land the dispute in the Southern District of New York.

Defendants move to dismiss on the grounds that the contract between Aerophile and Arial

contains a forum selection clause granting the French courts exclusive jurisdiction over this

dispute.  Defendants also move to dismiss the claims against Orlando on the grounds that this

Court lacks in personam jurisdiction.  For the reasons that follow, Defendants' motions are

GRANTED.

1

**BACKGROUND**

Arial is a Delware company established to operate a helium passenger balloon ride at the San Diego Zoo in California. (Compl. ¶ 2.) Aerophile is a French manufacturer of tethered helium balloons. (Id. ¶¶ 3-4.) On April 28, 2005, Arial and Aerophile executed a contract in New York providing for the sale and installation of a passenger balloon at the San Diego Zoo and for equipment and services related to the operation of the balloon. (Id. ¶¶ 8, 15-16.) The contract prohibited Aerophile from directly or indirectly soliciting business with the San Diego Zoo and granted Arial territorial exclusivity for passenger balloons within a 250-mile radius of the zoo. (Id. ¶ 17; Ex. A ("Contract") at 12 § 11.)

Arial alleges that in 2011 the balloon became inoperable. (Id. ¶¶ 24-26.) When Aerophile came to inspect the balloon, Aerophile offered to enter into a joint venture with Arial to operate the balloon at the San Diego Zoo and then, without permission from Arial, began to negotiate directly with the zoo in violation of the exclusivity clause. (Id. ¶¶ 25-27.) Arial's contract with the San Diego Zoo was not renewed. (Id. ¶ 30.) Because the contract was not renewed, Arial defaulted on loans, and the balloon and equipment were foreclosed on. (Id. at ¶ 30.) Aerophile then purchased the foreclosed on equipment for a substantially reduced price, a scheme Arial contends is a repeated practice. (Id. ¶ 32.)

*Contractual Provisions Designating Choice of Forum and Law*

The contract between Arial and Aerophile contains various provisions governing the procedure, forum and choice of law for any disputes. Disputes relating to "the interpretation or performance" of the contract must first go before a conciliator (French mediation). (Contract at 12 §§ 10.1-10.2.) If the parties fail to reach an agreement in conciliation, "either party may file suit for resolution of the dispute in the SENLIS Courts" in France, "which shall have exclusive

2

jurisdiction." (Id. § 10.3.)   The contract further provides that "[j]urisdiction for VENDOR

insurance issues shall be Paris – France and for all other legal matters shall be New York USA."

(Id. § 10.5.)  The choice of law clause, appearing under the heading "Applicable Law –

Interpretation – Disputes," states that "[t]he present contract is in accordance with French Law."

(Id. § 10.4.) [1]

*New York Action*

On August 13, 2012, Arial initiated proceedings in the Supreme Court of New York

alleging breach of contract, fraud and tortious interference, and seeking a restraining order to

prevent Aerophile from operating a balloon in San Diego.  (Compl. ¶ 33 n.2.)  On August 24,

2012, Judge Oing dismissed the action without prejudice, finding that Arial had failed to satisfy

the requirement that disputes relating to the interpretation or performance of the contract be

referred to a conciliator before the parties could file suit in court.  (Decl. of Gwénaëlle Madec

---

[1] The contract, reproduced in pertinent part, states:

**10 APPLICABLE LAW –INTERPRETATION – DISPUTES**
10.1 Disputes between the parties relative to the interpretation or performance hereof
shall be referred to a conciliator agreed on by the parties with a view to amicable
resolution of the dispute within two months of the referral to the conciliator.

10.2 If the parties do not agree on a conciliator within two months of a party's request for
conciliation, each party appoints a conciliator.  The conciliators appointed by the parties
shall appoint a single conciliator for the same purpose, namely an amicable agreement by
the parties within two months of his appointment.

10.3  If the parties do not reach agreement within the two-month period allowed them in
Article 11.2 [sic] to do so under the conciliator's aegis, either party may file suit for
resolution of the dispute in the SENLIS Courts,[1] which shall have exclusive jurisdiction.

10.4  The present contract is in accordance with French Law

10.5  Jurisdiction for VENDOR insurance issues shall be Paris – France and for all other legal
matters shall be New York USA.

(Contract at 12 §§ 10.1-10.5.)

("Madec Decl.") ¶ 2, Ex. 2 at 20-21, ECF No. 12; Contract at 12 §§ 10.1-10.3.)

*French Conciliation and Action*

Arial and Aerophile attempted to reach an agreement in French conciliation, but on November 8, 2013, an impasse was declared. (Madec Decl. ¶ 4, Ex. 3.) That day, Aerophile filed an action in French court asking for a declaratory judgment that the contract is no longer in effect. (Madec Decl. ¶ 5, Exs. 4-5.) A court date was set for June 24, 2014. (Id. ¶¶ 6-7.) Courtesy copies of the French legal papers were transmitted to Arial's French counsel via e-mail on June 13, 2014. (Id. ¶ 6.) On June 24, 2014, two French firms appeared before the French court claiming to represent Arial. (Id. ¶ 7.) At a hearing on July 15, 2014, Arial identified the firm that that would represent it in the French action, and Arial's counsel confirmed that he had received the Writ of Summons and accompanying exhibits. (Id. ¶ 8.) The French court set November 4, 2014 as the date for Arial to respond to Aerophile's action. (Id.)

*Instant Action and Motion to Dismiss*

On June 19, 2014, Arial filed the instant diversity action in the Southern District of New York against Defendants Aerophile S.A. and Aerophile Orlando alleging nearly identical claims to those initially raised in New York state court—breach of contract, fraud, and tortious interference with contract and business relations. (Compl. ¶¶ 38-64.) On August 11, 2014, Defendants filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6) and the doctrine of forum non conveniens on the grounds that the contract contains a forum selection clause granting exclusive jurisdiction to the French court. (Mem. of Law in Supp. of Defs.' Mot. to Dismiss ("Defs.' Mem."), ECF No. 13.) Defendants also moved to dismiss the complaint as it relates to Defendant Orlando for lack of in personam jurisdiction in accordance with Fed. R. Civ. P. 12(b)(2). (Id.) Plaintiffs filed an opposition on September 9, 2014 (Pl.'s Mem. in Opp'n to

4

Defs.' Mot. to Dismiss ("Opp'n"), ECF No. 19), and Defendants replied on September 30, 2014

(Defs.' Reply Mem. in Supp. of Mot. to Dismiss ("Reply"), ECF No. 34).

## DISCUSSION

### I.      Forum Selection Clause

Defendants contend that § 10.3 of the contract grants the French courts exclusive

jurisdiction over this dispute and move to dismiss the action under the doctrine of <u>forum non</u>

<u>conveniens</u> and Rule 12(b)(6) of the Federal Rules of Civil Procedure.  The Supreme Court

recently clarified that the proper vehicle for enforcing a forum selection clause is <u>forum non</u>

<u>conveniens</u>, rather than Rule 12(b).  <u>Martinez v. Bloomberg LP</u>, 740 F.3d 211, 216 (2d Cir.

2014) (citing <u>Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas</u>, 134 S. Ct. 568,

580 (2013)).  However, the analysis in this Circuit remains unchanged.  <u>Id.</u> at 216-17.  Relying

on the pleadings and affidavits, courts employ a four-step analysis to determine whether to

dismiss a claim based on a forum selection clause.  <u>Id.</u> at 217.  We inquire: (1) "whether the

clause was reasonably communicated to the party resisting enforcement"; (2) whether the clause

is "mandatory or permissive, i.e., . . . whether the parties are *required* to bring any dispute to the

designated forum or simply *permitted* to do so"; and (3) "whether the claims and parties involved

in the suit are subject to the forum selection clause."  <u>Phillips v. Audio Active Ltd.</u>, 494 F.3d

378, 383 (2d Cir. 2007) (emphasis in original).  "If the forum clause was communicated to the

resisting party, has mandatory force and covers the claims and parties involved in the dispute, it

is presumptively enforceable."  <u>Id.</u>  The resisting party can overcome this presumption only by

(4) "making a sufficiently strong showing that 'enforcement would be unreasonable or unjust, or

that the clause was invalid for such reasons as fraud or overreaching.'"  <u>Id.</u> at 383-84 (quoting

<u>M/S Bremen v. Zapata Off-Shore Co.</u>, 407 U.S. 1, 15 (1972)).

Where a contract contains a choice-of-law clause, questions relating to the interpretation

of the contract are properly resolved according to the law chosen by the parties. Martinez, 740

F.3d at 217-18.  Thus, the Second Circuit has determined that the interpretive questions posed by

the second and third inquiries are evaluated according to the law contractually selected by the

parties.  Id.  Step four of the analysis, relating to the enforcement of the forum clause, is resolved

according to federal law.  Id. at 217.

Although this is the general rule, a court need not apply foreign law to interpret a forum

selection clause unless the parties do so.  Id. at 223.  "Just as parties are free, via a choice-of-law

clause, to select the law to govern the interpretation of a forum selection clause, nothing prevents

the parties in litigation from choosing not to 'rely on any distinctive features of [the selected law]

and [instead to] apply general contract law principles and federal precedent to discern the

meaning and scope of the forum clause.'"  Id. (quoting Phillips, 494 F.3d at 386).

Here, the parties do not dispute that, pursuant to the choice of law clause, French law

governs the interpretation of the contract.  The Court will examine French law where the parties

rely on it.  However, neither side relies on French law for its interpretation of the meaning and

scope of the forum selection clause in § 10.3.  Defendants cite only federal law (Defs.' Mem. at

7-8), and Arial cites no law at all (Opp'n at 9-11).[2]  Accordingly, the Court will apply general

contract law principles and federal precedent throughout the analysis of § 10.3 under the Phillips

framework.

---

[2] Arial cites to federal law throughout its analysis of Arial's preferred forum selection clause, § 10.5,
(Opp'n at 6-9), but cites to no law, French or otherwise, to interpret the meaning and scope of § 10.3. (Id.
at 9-11.)

6

### A.  The Forum Selection Clause in § 10.3 is Presumptively Enforceable

#### i.      § 10.3 Was Reasonably Communicated to Arial

The forum selection clause in § 10.3 easily satisfies the first prong of the Phillips inquiry. The clause was reasonably communicated to Arial, as it appears on the face of the contract that Arial signed and now seeks to enforce.  See Kasper Global Collection & Brokers, Inc. v. Global Cabinets & Furniture Mfrs. Inc., 952 F. Supp. 2d 542, 558 (S.D.N.Y. 2013) ("Plaintiff seeks to enforce the terms of the [contract] and therefore cannot . . . argue that it was unaware of the clause's existence").

#### ii.     The Forum Selection Clause in § 10.3 is Mandatory

The second question is whether the clause is permissive or mandatory.  A permissive forum selection clause "only confers jurisdiction in the designated forum, but does not deny plaintiff his choice of forum, if jurisdiction there is otherwise appropriate."  Phillips, 494 F.3d at 386.  By contrast, "[m]andatory forum selection clauses . . . require that disputes *must* be brought in the designated forum, to the exclusion of all other fora where jurisdiction may also lie." Global Seafood Inc. v. Bantry Bay Mussels Ltd., 659 F.3d 221, 225 (2d Cir.2011) (emphasis in original) (citing Phillips, 494 F.3d at 386).

"In determining whether the forum selection clause is mandatory, our initial focus is on the language of the contract." Global Seafood, 659 F.3d at 225 (citation and internal quotation marks omitted). "A forum selection clause is considered mandatory where: (1) 'it confers exclusive jurisdiction on the designated forum' or (2) 'incorporates obligatory venue language.'" Id. (quoting Phillips, 494 F.3d at 386).

Under § 10.1 of the contract, disputes related to the "interpretation or performance" of the contract "*shall* be referred to a conciliator . . . with a view towards resolution of the dispute."

7

(Contract at 12 § 10.1.) If the parties fail to reach an agreement in conciliation, section § 10.3 provides that "either party may file suit for resolution of the dispute in the SENLIS Courts, which *shall have exclusive jurisdiction*."[3] Id. (emphasis added). This clause is unquestionably mandatory, as it contains both language of exclusive jurisdiction and obligatory venue. Phillips, 494 F.3d at 386.

### iii.    The Parties and Claims are Subject to the Forum Selection Clause in § 10.3

The final inquiry is to determine whether the parties and claims are subject to the mandatory forum selection clause in § 10.3. Reading §§ 10.1, 10.2 and 10.3 in tandem, for any dispute related to the interpretation or performance of the contract, the parties must first go to conciliation. (Contract at 12 §§ 10.1-10.3.) If conciliation fails, the Senlis courts have exclusive jurisdiction over the dispute. (Id. § 10.3.)

It follows that the parties and claims are subject to the mandatory forum selection clause if this dispute relates to the interpretation or performance of the contract and the parties have satisfied the condition precedent of conciliation. Arial does not dispute that the instant action relates to the "interpretation or performance" of the contract. As for conciliation, Arial attempted to bring a nearly identical action in New York State court, but Judge Oing dismissed the claims because the parties had not attempted conciliation as required by § 10.1. (Madec Decl. ¶ 2, Ex. 2 at 20-21.) The parties then entered conciliation, but an impasse was declared on November 8, 2013. (Madec Decl. ¶ 4, Ex. 3.) Thus, "exclusive jurisdiction" over the claims and parties now rests with the Senlis courts.

## B. Arial Has Not Rebutted the Presumption of Enforceability

Having determined that the forum selection clause in § 10.3 was communicated to Arial,

---

[3] The courts of Senlis now sit in Compiegne, France, which is where Aerophile filed suit on November 8, 2013. (Defs.' Mem. at 3, 6; Madec Decl. ¶ 5.)

has mandatory force, and covers the parties and claims before the court, §10.3 is presumptively enforceable. Phillips, 494 F.3d at 383. Dismissal of this action is proper unless Arial makes "a sufficiently strong showing that enforcement would be unreasonable or unjust." Martinez, 740 F.3d at 227. This is a "heavy burden." Id. at 219 (quoting Bremen, 407 U.S. at 13-14). A forum selection clause is enforceable unless "(1) its incorporation was the result of fraud or overreaching; (2) the law to be applied in the selected forum is fundamentally unfair; (3) enforcement contravenes a strong public policy of the forum' in which suit is brought; 'or (4) trial in the selected forum will be so difficult and inconvenient that the plaintiff effectively will be deprived of his day in court.'" Id. at 228 (quoting Phillips, 494 F.3d at 392).

Arial does not contend that any of the first three circumstances are present. Arial argues that "it would be difficult to summon . . . witnesses to a French court." (Opp'n at 8.) In Phillips, the plaintiff similarly contended that litigation in England would be difficult because none of his witnesses was located there. Phillips, 494 F.3d at 392-93. The Second Circuit rejected this argument, concluding that the plaintiff had merely suggested that "litigation in England may be more costly or difficult, but not that it is impossible." Id. at 393. The plaintiff failed to allege any circumstances that would "prevent him from bringing suit in England." Id.

Similarly, Arial has failed to show that litigation in France would be impossible or that Arial would incur any hardships that were "not foreseeable when [Arial] agreed to litigate in [France.]" Phillips, 494 F.3d at 393.

## C. Arial's Reading of the Contract Misapprehends Basic Principles of Contract Law

Arial's primary argument, somewhat outside of the Phillips framework, is that the contract that was executed by the parties containing § 10.3 should be read as if § 10.3 does not exist. According to Arial, § 10.5 is the "final governing forum selection clause." (Opp'n at 5.)

9

§ 10.5 provides that "[j]urisdiction for VENDOR insurance issues shall be Paris – France and for all other legal matters shall be New York USA." (Contract at 12 § 10.5.) Arial contends that the parties added § 10.5 in later drafts with the intent of abrogating § 10.3, thereby making New York the proper venue for all matters other than insurance. (Opp'n at 3.)

In support, Arial offers extrinsic evidence of the drafting history of the contract. Arial submits an email from Gopal Jambavat ("Jambavat"), President of Arial, to Jerome Giacomoni, President of Aerophile S.A., in which Jambavat writes, "we are now clear that just for the manufacture insurance coverage purposes we shall keep France as jurisdiction … and for all other aspects New York USA will be the legal jurisdiction." (Aff. of Gopal Jambavat in Supp. of Arial Technologies' Opp'n to Defs.' Mot. to Dismiss ("Jambavat Aff.") Ex. D at 1, ECF No. 22.)[4] Notably, this email is from Arial. Arial does not submit any evidence indicating Defendants acknowledged, much less agreed with, Arial's interpretation.

Defendants argue that the French Civil Code requires an interpretation that harmonizes §§ 10.3 and 10.5, as opposed to Arial's interpretation which effectively strikes § 10.3. Under French Civil Code Article 1161, "[a]ll of the clauses of agreements shall be interpreted in relation to the others, so that each is defined according to the entire instrument." *Code civil* [C. civ.] art. 1161 (Madec Decl. ¶ 11, Ex. 10 at 1.) "When a clause may have two meanings, it shall be understood according to the meaning by which it may have some effect rather than the meaning by which it may not have any effect." C. civ. art. 1157 (Madec Decl. ¶ 10, Ex. 8.)

Applying the above canons the contract, Defendants read § 10 as establishing a

---

[4] Arial does not sufficiently address the admissibility of this evidence under French law. Arial notes only that French Civil Code Article 1156 instructs courts to give effect to the common intention of the parties over the plain language of the contract. (Opp'n at 7, n.1.) Even if Arial's submissions are admissible, they are not probative that both parties intended to make New York the jurisdiction for disputes relating to contract interpretation or performance.

trifurcated forum selection clause: (1) disputes related to the "interpretation or performance" of the contract are to be litigated in the Senlis courts, "which shall have exclusive jurisdiction"; (2) if any "insurance issues" arise, jurisdiction for those disputes "shall be Paris – France" (Contract at 12 § 10.5)); and (3) if any "other legal matters" arise, jurisdiction "shall be New York USA." (Id. § 10.5).)

The Court agrees with Defendants' reading of the contract. Defendants' interpretation gives meaning to each forum selection clause, whereas Arial impermissibly reads § 10.5 as striking § 10.3. C. civ. art. 1157; accord Galli v. Metz, 973 F.2d 145, 149 (2d Cir. 1992) ("interpretation that gives a reasonable and effective meaning to all terms of a contract is generally preferred to one that leaves a part unreasonable or of no effect.") Both parties negotiated and signed a contract containing § 10.3 which grants exclusive jurisdiction to the French court in Senlis in matters pertaining to contract interpretation or performance. Absent any admissible and probative evidence that both parties intended otherwise, the Court will not read the contract as if § 10.3 does not exist.

The Court has considered Arial's remaining arguments regarding the meaning and enforceability of the forum selection clause and has determined they are without merit. In the prophetic words of the Phillips Court:

> A plaintiff may think that as the initiator of a lawsuit he is the lord and master of where the litigation will be tried and under what law. But if he is a party to a contract that contains forum selection and choice of law clauses his view of himself as ruler of all he surveys may, like an inflated balloon, suffer considerable loss of altitude.

Phillips, 494 F.3d at 381. Defendants' motion to dismiss is GRANTED.

## II.     The Claims Against Aerophile Orlando Are Dismissed for Lack of In Personam Jurisdiction

Defendants move to dismiss the claims against Defendant Orlando under Rule 12(b)(2)

11

for lack of in personam jurisdiction. A plaintiff served with a Rule 12(b)(2) motion to dismiss bears the burden of establishing that the court has personal jurisdiction over the defendant. Whitaker v. Am. Telecasting, Inc., 261 F.3d 196, 208 (2d Cir. 2001). If, as here, jurisdiction is challenged prior to discovery, the plaintiff may defeat the motion by "pleading in good faith . . . legally sufficient allegations of jurisdiction, i.e., by making a prima facie showing of jurisdiction." Whitaker, 261 F.3d at 208 (citations and internal quotation marks omitted).

To determine whether the court has jurisdiction, "the court must look first to the long-arm statute of the forum state, in this instance, New York." Bensusan Rest. Corp. v. King, 126 F.3d 25, 27 (2d Cir. 1997). If jurisdiction is appropriate under the long-arm statute, the court must then decide whether exercising jurisdiction over the defendant comports with due process. Id.

New York law authorizes general and specific jurisdiction over foreign defendants pursuant to CPLR §§ 301-302. N.Y. C.P.L.R. §§ 301-302. Heretofore under CPLR § 301, the court may exercise general jurisdiction over any defendant that is "engaged in such a continuous and systematic course of doing business here as to warrant a finding of its presence in this jurisdiction." Landoil Res. Corp. v. Alexander & Alexander Servs., Inc., 918 F.2d 1039, 1043 (2d Cir. 1990) (citation and internal quotation marks omitted); cf. Daimler AG v. Bauman, 134 S. Ct. 746, 761 (2014) (holding that even "engagement in a substantial, continuous, and systematic course of business" in a forum state is insufficient to render a corporation "at home" in accordance with due process). "New York courts have generally focused on the following indicia of [general] jurisdiction: the existence of an office in New York; the solicitation of business in New York; the presence of bank accounts or other property in New York; and the presence of employees or agents in New York." Id.

Under CPLR § 302, specific jurisdiction arises when the defendant's activities in New

York are the subject of the action before the court. "This Court has specific jurisdiction when, for example, a defendant transacted business within New York," "contracted anywhere to supply goods or services in New York," or "committed a tortious act within New York." TAGC Mgmt., LLC v. Lehman, 842 F. Supp. 2d 575, 581 (S.D.N.Y. 2012).

Arial has put forth no allegation of even a single transaction or contact with New York that might subject Orlando to personal jurisdiction in a New York court. Arial's lone basis for asserting jurisdiction is that Orlando "maintained the critical spare components for the balloon operations governed by the Contract" between Aerophile and Arial. (Compl. ¶ 11.) But Orlando is not a party to that contract, (Contract at 1), and there are no allegations that Orlando's involvement included any activity in New York. Orlando is a Florida corporation (Compl. ¶ 5), and Arial does not allege that Orlando holds any property, office or employees in New York, or that Orlando has ever done business in New York.

Arial has plainly failed to plead sufficient facts to make a prima facie showing of jurisdiction over Orlando. Accordingly, Defendants' motion is GRANTED and the claims against Orlando are dismissed.

## CONCLUSION

Defendants' Motion to Dismiss [ECF No. 9] on the grounds of forum non conveniens is GRANTED, and Defendants' Motion to Dismiss [ECF No. 9] the claims against Orlando for lack of personal jurisdiction is GRANTED.

SO ORDERED.

Dated: New York, New York
March 31, 2015

Loretta A. Preska

Loretta A. Preska
Chief U.S.D.J.

13

**Copies of this opinion and order were sent to:**

**Padmaja Chinta**
Cittone & Chinta LLP
11 Broadway, Suite 615
New York, NY 10004
(212)-710-5619
Fax: (212)-624-0244
Email: pchinta@cittonechinta.com

**David Gregg Trachtenberg**
Trachtenberg ,Rodes, and Friedberg
545 5th Avenue
NY, NY 10017
(212) 972-2929
Fax: (212) 972-7581
Email: dtrachtenberg@trflaw.com